IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MAGGIE RUSSELL                                                                    PLAINTIFF

VS.                                              CIVIL ACTION NO. 1:22-cv-00086-TBM-RPM

MISSISSIPPI GULF COAST COMMUNITY                                  DEFENDANTS
COLLEGE through its Board of Trustees
(in their official and individual capacities) and
DOES 1-20; inclusive

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant Mississippi Gulf Coast Community College (hereinafter

"MGCCC" or "College"), by and through counsel, and submits this Reply to Plaintiff's

Response in Opposition to Motion for Summary Judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure, and in support thereof would show unto the Court the following, to-

wit:

**I.      INTRODUCTION**

Plaintiff has failed to show that there is a dispute of any material fact, and her claims of

discrimination asserted pursuant to Title II of the Americans with Disabilities Act, and the

Rehabilitation Act of 1973must be dismissed.

**II.     RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACTS**

Plaintiff outlines thirteen statements, which she asserts are material facts.   These

statements are neither material, nor or they complete and accurate.   Plaintiff asserts that MGCCC

failed to involve her in the accommodation process citing to Susan Russell's testimony.   In fact,

the College did involve Plaintiff in the accommodation process as set out in Dr. Brown's

affidavit and the testimony of Aimee McGehee.   Exhibit "6" and "4."   Ms. McGehee testified

1

that she worked directly with Maggie regarding her accommodations, and in fact spent more time with Maggie than most students because she used her accommodations. Exhibit "4" p. 8. Maggie's Fall 2018 accommodations are outlined in her disability accommodation renewal, where Maggie identifies Ms. McGhee as her best proctor. Exhibit "3."

Plaintiff also asserts that MGCCC entered into a resolution agreement with the Office of Civil Rights ("OCR") without the input or consent of the Plaintiff. While this is not disputed, it is not material to the claims in this case. The OCR acknowledged that MGCCC agreed to resolve the complaint prior to the completion of OCR's investigation and OCR drafted the resolution agreement to resolve the Plaintiff's allegations. Exhibit "10." Civil Rights Attorney Craig Nydick explained to Plaintiff and her mother that MGCCC's legal requirement to provide a reasonable alternative to the college algebra requirement was satisfied. Exhibit "12." Plaintiff failed to cite any authority which requires the College to include her in the resolution of the complaint made to OCR.

Plaintiff asserts that she "needed alternative options other than college algebra." Plaintiff was provided three alternative pathways to graduation. Exhibit "10." Plaintiff argues, without any citation to authority or supporting evidence, that the alternatives offered contained algebra or had algebraic components. Maggie has completed two of the three substitute courses offered in option (B) of the accommodation, Physical Science and Economics. Maggie needs only to complete Visual Basic Programming and she will be eligible for her Associate of Arts degree. Maggie has failed or refused to enroll in Visual Basic Programing.

On April 30, 2019, Maggie informed the college that she would no longer continue enrollment at MGCCC, Exhibit "16." Seven months later Maggie was diagnosed with dyscalculia. Exhibit "18." The diagnosis was made over a year after MGCCC entered into the

Resolution Agreement with the OCR on October 10, 2018. Exhibit "10."  Prior to the December 4, 2019, diagnosis, MGCCC had no knowledge of the Plaintiff's dyscalculia, and could not have known because the condition was not diagnosed during Maggie's enrollment.  Nevertheless, MGCCC worked with Maggie and OCR to offer reasonable accommodations to Maggie. During her deposition, Susan Russell testified that the purpose of having Maggie tested for dyscalculia was to "prove to the college that Maggie was not faking [her disabilities]." Exhibit "1" at pg. 63, ln. 11-14. However, when asked, Susan Russell could not provide a single instance of an MGCCC employee accusing Maggie of faking her disabilities. *Id.* at pg. 63, ln. 17-18.

Plaintiff argues that "College Algebra has not been determined to be an essential component of an associate in art degree as the faculty members as MGCCC controls the curriculum." (sic) In support of this statement Plaintiff cites to Dr. Jason Pugh's testimony. However, this statement is incorrect.  Dr. Pugh testified that College Algebra is part of the core curriculum which is decided by the College's general education committee and approved by the accrediting body.  Exhibit "9" p. 9 ln. 19-5.   Dr. Pugh testified that he had been associated with the College for over 20 years and he could only recall the core curriculum being slightly modified one time in many years. *Id.* p. 11 ln. 3-6.  When asked if anything was stopping the [College] from granting an exception with respect to Maggie Russell and College Algebra Dr. testified:

> The institution would have a very difficult time with its accrediting body if it made a waiver to its core curriculum for any purpose, because it's just not something that's – that's on the table to be done.  It's also not good practice for transferability, because quite often, it kills that process.  So – so no, I don't – I would say that our biggest challenge would be with the accrediting body.

*Id.* p. 11 ln. 13-21. Dr. Phillip Bonfonti testified that a waiver of the requirement for College Algebra would have fundamentally altered the nature of the program in that the core curriculum

is the same for all students.  Exhibit "22" p. 47.

Plaintiff also asserts that she requested a waiver which was never considered.  However, it is undisputed that Plaintiff requested a waiver and substitution.  On June 19, 2018, Susan Russell wrote to Dr. Suzana Brown to formally request that the College Algebra requirement be "waived and replaced." Exhibit "7." The College offered Maggie three options to complete her degree requirements without taking College Algebra.  Exhibit "10."

Finally, Plaintiff asserts that "[t]o the best of Defendants knowledge, Plaintiff's disabilities were not taken into consideration when determining the reasonableness of accommodations or a course waiver.  The testimony of Dr. Pugh, on behalf of MGCCC, was that he did not know how Maggie's disabilities were considered or if there was discussion about Maggie's specific disabilities.  Exhibit "9" p. 19.  What is undisputed is that MGCCC considered the necessary skills that were required as part of the core curriculum and outlined three alternative pathways to show proficiency in those skills. Exhibit "22" at pg. 29-30. It is also undisputed that MGCCC testified that proficiency in those skills was an essential part of completing the associate of art degree.  *Id.* at pg. 47, ln. 9-16; *Id.* at 67, ln. 9-20.

## III.    ARGUMENT

In August of 2015 Maggie Russell enrolled at MGCCC to pursue and Associate of Arts degree.  Maggie completed 94 credit hours with a 3.59 grade point average.  Exhibit "5." Maggie must complete one more course in order to be eligible for her associate degree.

Maggie has not shown that there is any dispute as to any material fact or otherwise met her burden to overcome MGCCC's Motion for Summary Judgment.

### A.    MAGGIE RUSSELL IS NOT AN OTHERWISE QUALIFIED INDIVIDUAL WITH RESPECT TO THE REHABILITATION ACT:

Maggie Russell is not an otherwise qualified individual.  Plaintiff is correct, to be

"otherwise qualified" for a postsecondary education program, an individual with a disability must satisfy the program's "essential" requirements, with or without the aid of reasonable accommodations. *Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215, 220 (5th Cir. 2018); (citing *McGregor v. La. State Univ.*, 3 F.3d 850, 855 (5th Cir. 1993); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 462 (4th Cir. 2012); *Zukle v. Univ. of Cal.*, 166 F.3d 1041, 1046 (9th Cir. 1999)).

Dr. Jason Pugh is currently the Executive Vice President of Administration and Finance at MGCCC.  Between 2015 and 2018 Dr. Pugh was the Vice President of Teaching and Learning.  Dr. Pugh testified that College Algebra is part of the core curriculum which is decided by the College's general education committee and approved by the accrediting body.  Exhibit "9" p. 9 ln. 19-5.   Dr. Phillip Bonfonti, Vice President for Student Services and Enrollment Management testified that College Algebra is a part of the core curriculum and that all students who graduate have completed the same forty (40) hours and to remove one of the courses would fundamentally alter the nature of the foundation of the associate of arts degree.  Exhibit "22" p. 47.  Plaintiff also argues that MGCCC has made no showing that College Algebra is an essential component of "associate art degree program. College Algebra is not required to be successful in an art profession," [Doc. 35 p. 10].  Maggie has not satisfied the essential requirements to obtain an Associate of Arts degree; and is therefore, not an otherwise qualified individual.

In response to Defendant's Motion for Summary Judgment Maggie admits that she has completed all the credit hours at MGCCC to complete her "associate degree in art," with the exception of College Algebra.  However, Maggie argues, without any authority, that College Algebra is not "essential" to the "associate of art" program.  This is a mischaracterization of the facts and testimony.  Maggie was not working toward an art degree.  Dr. Bonfonti was asked

specifically if Maggie would have received an associate degree in arts and he testified "No."

Exhibit 22 p. 61. Dr. Bonfonti further testified:

> Q:    What's the degree she would have gotten?
>
> A:    An associate of arts.
>
> Q:    That's what - - I mean - - okay.
>
> A:    It's the same degree every student would have received.  There's no - - we
>        only offer one – we only offer three degrees: An associate of arts,
>        associate of science, and associate of applied science.  That's it.
>
> Q:    Gotcha.
>
> A:    There's no - - unlike a four-year institution, you don't have an associates
>        of arts in something.  It's just an associate of arts.
>
> Q:    I understand.
>        And then presumably she could have tried to go to a four-year school to
>        get a bachelor's?
>
> A:    Right. The associate of arts is designed to prepare you to transfer to a
>        degree in the arts broadly, not fine arts, but in the arts at a four-year
>        institution, associate of science in science filed, so on.

Exhibit "22" p. 61-62.  Dr. Bonfonti was asked if MGCCC thought there were students who, no

matter how hard they work should be able to graduate because they can't meet some requirement

and testified:

> I think the university says or degree says you have a certain level of college
> proficiency in five areas; and if you cannot show us that you have those five
> levels of proficiency, we can't give you your degree that says you have something
> you don't have.
> It's about work, but it's also about attaining certain levels of proficiency.  We're
> telling employers without our degree, we're telling four-year institutions with our
> degree that these students have obtained this level of proficiency in these five
> areas.
> …
> If the student cannot master the five college-level proficiencies, then we should
> not give them a piece of paper that says they did.

Exhibit "22" p. 66-7.

Plaintiff cannot show that she is an otherwise qualified individual.  Furthermore, Plaintiff cannot show that College Algebra is not essential to the nature of the program.  The associate degree program would be fundamentally altered if she were allowed to obtain her degree without satisfying the core requirements, including college algebra or one of the alternative pathways offered.  MGCCC is entitled to summary judgment as a matter of law.

### B.   ALL ACCOMODATIONS OFFERED TO MAGGIE RUSSELL WERE REASONABLE AND IN GOOD FAITH

Plaintiff argues, without any evidence or authority, that the accommodations, or alternative courses, offered by MGCCC were unreasonable and violated both Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. It is also undisputed that MGCCC offered reasonable accommodations to Maggie, during her enrollment and with respect to the substitution of courses in lieu of College Algebra.

In the fall of 2017 Maggie and her mother met with Dr. Suzana Brown, then the Dean of Teaching and Learning at the Harrison County Campus of MGCCC, to discuss difficulties Maggie was having in Intermediate Algebra.  Exhibit "6."  Dr. Brown recommended that Maggie enroll in "MAT 1314" which is a four-hour College Algebra class that requires time in the learning lab and provides additional support.  *Id*. and Exhibit "22" p. 37.  However, Maggie and her mother decided not to follow the recommendation of Dr. Brown, and instead Maggie enrolled in College Algebra during the summer of 2018.   Dr. Bonfonti testified that the summer class in which Maggie chose to enroll was a compressed format, a five-week class requiring daily attendance.  *Id*. p. 39.  The class which was recommended is a sixteen-week class during the fall which requires use of the learning lab and tutoring.  *Id*. p. 38.  MGCCC tried to engage in an interactive process but Maggie and her mother ignored the recommendations.   Plaintiff's

argument that MGCCC did not provide what she deemed a reasonable alternative to College Algebra is without merit.

Following Plaintiff's complaint to the OCR, MGCCC worked to find reasonable alternatives "which allowed her to obtain the same skills as she would in College Algebra." Exhibit "22" p. 29. Specifically, the college was concerned with making sure that Maggie obtained the skills required of a student earning an associate of arts degree. *Id*. at p. 34. Dr. Bonfonti testified that "it's not a one-to-one; otherwise, it would be called College Algebra." *Id*. at p. 29. The college faculty went through the process of determining in which courses Maggie could get the requisite skills and entered into the resolution agreement with the OCR. The alternative courses were to accommodate Maggie's request to substitute College Algebra without lowering the standards of the degree. *McGregor v. Louisiana State University Bd. of Sup'rs,* 3 F.3d 850,858 (5th Cir. 1993). However, Maggie and Susan testified that they want MGCCC to award Maggie an Associate of Arts degree without her completing the necessary requirements. Exhibit "1" p. 81 ln 13-16; Exhibit 17 p. 52 ln 15-20.

Plaintiff also argues that the offered courses did not take into consideration Plaintiff's limitations because of her disability. This argument is made without any citation to authority. In fact, the requirement of MGCCC is to offer accommodations which are reasonable and that do not alter its program. The Court must defer to the university's academic decision not to alter its program" *Campbell v. Lamar Institute of Technology,* 842 F.3d 375, 380 (5th Cir. 2016) (citing *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)). The Court also held, "an institution is not bound to acquiesce in and implement every accommodation a disabled student demands." *Id.* at 381. "[A]n institution is not required to 'lower or [ ] effect substantial modifications of standards to accommodate a handicapped person,' if its standards are

reasonable." *Id*. (citing *Davis*, 442 U.S. at 423; see also 34 C.F.R. § 104.44(a)).  There is no evidence in the record before this court that MGCCC's standards and offered accommodations were unreasonable.  "A disabled student does not have a right to his accommodation of preference." *Campbell,* 842 F. 3d at 380 (citing *E.E.O.C. v. Agro Distribution, LLC*, 555 F. 3d 462, 471 (5th Cir. 2009).

Plaintiff has not, and cannot, show any evidence that MGCCC acted in bad faith. MGCCC recommended that Maggie take MAT 1314, Maggie refused to enroll in that class.  In response to the OCR complaint MGCCC offered three alternatives.  Maggie is one class away from completing her degree and has not enrolled in that course.  MGCCC testified that it was committed to assisting Maggie in completing her course work.  Dr. Phillip Bonfonti testified that MGCCC would have continued to provide help and support to help Maggie earn her degree. Exhibit "22" pp. 33-4, 44-6, 58-9, 65.  Ms. McGehee testified that she was available to assist with whatever Maggie needed to be successful and earn her degree.  Exhibit "4" p. 15 and 23. There is no evidence of any bad faith or intentional discrimination.  "[A]bsent evidence of discriminatory intent or disparate impact, we must accord reasonable deference to the [institution's] academic decisions." *McGregor v. Louisiana State University Bd. of Sup'rs,* 3 F.3d 850,859 (5th Cir. 1993).

Maggie, and her mother, argue that the accommodations are unreasonable, but their opinions do not satisfy the burden in proving that the options offered by MGCCC were unreasonable. MGCCC submits that the Court should abide by the "reasonable deference" standard set forth in *McGregor* and *Campbell* and dismiss both of the Plaintiff's causes of action. *Campbell*, 842 F.3d at 381; *McGregor* 3 F.3d at 859.

## V.        CONCLUSION

Maggie is not an otherwise qualified individual.  It is undisputed that MGCCC offered reasonable accommodations for Maggie's disabilities.  Maggie has failed to come forth with any specific facts which demonstrate a genuine issue for trial.  Further, Maggie has not and cannot show any evidence of malice, ill-will, or efforts on the part of MGCCC to impede her progress. The opposite is true, MGCCC offered support and accommodations throughout Maggie's tenure. As the Fifth Circuit held in *McGregor*, deference must be accorded to MGCCC in its decisions not to modify its program regarding academic decisions.  3 F.3d at 858.

MGCCC has met and even exceeded the standards of Title II of the Americans with Disabilities Act, and the Rehabilitation Act of 1973, §504. MGCCC has worked to accommodate Maggie in obtaining her degree.  MGCCC is entitled to summary judgement as a matter of law.

RESPECTFULLY SUBMITTED, this the 30th day of May, 2023.

**MISSISSIPPI GULF COAST COMMUNITY COLLEGE, DEFENDANT**

BY:      */s/ Kristi Rogers Brown*
          OF COUNSEL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 30, 2023, I electronically filed the forgoing *Reply to Plaintiff's Response to Motion for Summary Judgment* with the Clerk of the Court using the ECF system which sent notification of such filing to counsel who have electronically registered with the Court:

SO CERTIFIED this the 30th day of May, 2023.


BY:     */s/ Kristi Rogers Brown*
       KRISTI ROGERS BROWN


KRISTI ROGERS BROWN - BAR # 101989
kbrown@danielcoker.com
C. HUNTER SALAMONE- BAR #106514
hsalamone@danielcoker.com
DANIEL COKER HORTON AND BELL, P.A.
1712 15th STREET, SUITE 400
POST OFFICE BOX 416
GULFPORT, MS 39502-0416
TELEPHONE:  (228) 864-8117
FACSIMILE:   (228) 864-6331